JAMES F. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES F. SMITH COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket Nos. 8879-93, 8880-93.
United States Tax Court
T.C. Memo 1995-410; 1995 Tax Ct. Memo LEXIS 413; 70 T.C.M. (CCH) 502; August 23, 1995, Filed *413 Decisions will be entered under Rule 155. James F. Smith, pro se. Michael C. Prindible and Audrey M. Morris, for respondent. COLVIN, Judge COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax as follows: [1]
James F. Smith
Additions to Tax
Sec. 6653
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)(1)
(a)(1)(A)
1987
$ 13,512.24
- 0 -
- 0 -
$ 675.61
1988
6,872.39
$ 1,718.10
$ 405.15
- 0 -
1989
7,059.00
1,764.75
- 0 -
- 0 -
Sec. 6653
Year
(a)(1)(B)
Sec. 6654
Sec. 6661
Sec. 6662(a)
1987
[1]
- 0 -
$ 3,378
- 0 -
1988
- 0 -
$ 57
1,718
- 0 -
1989
- 0 -
76
- 0 -
$ 1,411.80
James F. Smith Co.
Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1988
$ 4,948.27
$ 1,164.25
$ 247.41
After concessions, [2] *414 the issues for decision are: 1. Whether payments petitioner James F. Smith received from his wholly owned corporation, petitioner James F. Smith Co., of $ 10,613 in 1988 were constructive dividends, loan repayments, or compensation from the corporation. We hold that the payments were compensation includable in his income and deductible by petitioner corporation. 2. Whether expenses paid by the corporation for a condominium used as an office and as a residence by petitioner *415 were constructive dividends to petitioner or were business expenses that were deductible by the corporation. We hold that: (a) In 1988, one-fourth ($ 4,677) was deductible business expenses and three-fourths ($ 14,032) were constructive dividends, and (b) in 1989, one-fourth ($ 967) was deductible business expenses and three-fourths ($ 2,900) were S corporation flowthrough income. 3. Whether petitioner is liable for additions to tax for: (a) Late filing under section 6651(a) for 1988 and 1989, (b) negligence under section 6653(a) for 1988, (c) failure to pay estimated taxes under section 6654 for 1988 and 1989, (d) substantial understatement of tax under section 6661 for 1988, and (e) the accuracy-related penalty under section 6662(a) for 1989. We hold that he is. 4. Whether petitioner corporation is liable for additions to tax for: (a) Late filing for 1988, and (b) negligence for 1988. We hold that it is. References to petitioner are to James F. Smith. References to petitioner corporation are to the James F. Smith Co. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS *416 OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner resided in Abilene, Texas, when he filed the petition in this case. 2. James F. Smith Co.
The James F. Smith Co. had its principal place of business in Abilene, Texas, during the years in issue and when it filed the petition. Petitioner is (and was in the years in issue) the president of petitioner corporation. Effective January 1, 1989, petitioner incorporated the company as an S corporation. Petitioner was the sole shareholder. Petitioner's basis in petitioner corporation was $ 1,000 in 1988 and 1989. Petitioner corporation was in the construction business in 1988 and 1989, and specialized in renovations and remodeling. Its only customer in 1988 and 1989 was Motel 6. Petitioner corporation refurbished several Motel 6 motels in those years, many of which were located outside Abilene, Texas. 3. Petitioner's Condominium
Petitioner corporation rented a three-bedroom condominium (the condominium) at 11 Rue Maison in Abilene, Texas, from 1987 to 1989. The condominium was petitioner corporation's principal place of business from 1987 to 1989. Petitioner corporation paid the *417 condominium expenses, such as rent, utilities, and taxes, in 1988 and 1989. Petitioner was away from Abilene about 300 days in 1988, and about 320 days in 1989. Petitioner lived in the condominium when he was in Abilene. Petitioner stored supplies, equipment, and building materials (such as air-conditioners and hot water heaters) in the garage of the condominium. Customers contacted him at the condominium, and people with whom he did business occasionally stayed there. He kept tools and supplies (such as nails, masking tape, drywall materials, and paint) in the living room when the garage was full. Petitioner sometimes parked a car that he used for business, a 1978 Lincoln, in the garage. He also owned a 1977 Lincoln that he used for personal purposes in 1988 and 1989. Petitioner used the downstairs bedroom exclusively as an office. He used the two upstairs bedrooms as bedrooms. The living room had a couch, a cable-connected television, and a chair. There was also a coffee table, a small radio, and a dining room table with four chairs. The kitchen had a refrigerator. Petitioner did not keep food in the refrigerator. He ate in restaurants most of the time when he was in Abilene, but *418 he ate some meals in the condominium when he was in town. Petitioner kept some silverware and a few plates and pots and pans in the condominium. He also kept two or three suits and a few coats there. Petitioner hosted a Christmas party in the condominium each year. 4. Petitioner Corporation's Payment of Expenses
Petitioner corporation did not pay petitioner a salary or declare dividends in the years in issue. Instead, in 1988 petitioner withdrew $ 33,875 in cash from the corporation's bank account. He used $ 23,562 of that amount for business expenses and the rest ($ 10,313) for living expenses such as food, clothing, and gas. Petitioner corporation also paid $ 300 for petitioner's insurance in 1988. Petitioner did not report these amounts as income on his 1988 tax return. Petitioner did not have a personal checking account in 1988 or 1989. In 1988, petitioner corporation paid $ 18,709 for various condominium expenses. In 1989, petitioner corporation paid $ 3,867 for condominium taxes and utilities. [3]
*419 5. Petitioner's Returns
Petitioner reported Schedule C income from petitioner corporation of $ 7,043.09 in 1988 and $ 3,200.33 in 1989. Petitioner filed his 1987 Federal income tax return on August 15, 1988. Petitioner obtained extensions of time until October 15, 1989, to file his 1988 return. He filed it on March 21, 1991. His signature on it is undated, and the signature of his return preparer, Ed Wentrcek (Wentrcek), is dated February 22, 1990. Petitioner filed his 1989 return on March 21, 1991. Wentrcek's signature on it is dated March 2, 1990, and petitioner's signature is dated April 13, 1990. Petitioner corporation filed its 1988 return on February 23, 1990. Petitioner's signature on it is undated. Wentrcek's signature is dated January 30, 1990. Petitioner corporation did not obtain an extension of time to file its 1988 return. OPINION 1. Payments By Petitioner Corporation To or For the Benefit of Petitioner
a. Cash Withdrawals From Petitioner Corporation's Bank Account
Petitioner used $ 10,313 which he withdrew from petitioner corporation's bank account to pay personal living expenses. Respondent determined that the payments were dividends to petitioner. *420 Petitioner contends that the amounts that he withdrew from petitioner corporation's bank account were repayments of loans he had made to the corporation. Petitioner has the burden of showing that the payments were related to a bona fide loan. Rule 142(a); . In deciding whether a bona fide loan exists, we consider: (a) Whether there is a note or other evidence of indebtedness and whether the lender charges interest, , affd. ; (b) whether there is a fixed repayment schedule, , affd. ; (c) whether the lender requests any security or collateral, ; (d) whether there is a written loan agreement, , affg. ; (e) whether *421 the parties' records, if any, treat the transaction as a loan, id.; and (f) whether the borrower has made any repayments, Frierdich v. Commissioner, 925 F.2d at 182. Petitioner has not convinced us that he made a bona fide loan to petitioner corporation. Petitioner's only evidence that he made a loan was his accountant's testimony. Wentrcek testified that petitioner corporation owed petitioner about $ 20,800, and that these cash withdrawals were partial repayments of the loans. Wentrcek testified that some individuals lent petitioner money that he then lent to the corporation. He also said that there were no written loan agreements between petitioner and these individuals. Wentrcek also testified that petitioner's loan to the corporation was not reported as "loans from shareholders", and was incorrectly reported as a mortgage, note, or bond payable in less than 1 year on the Schedule L attached to the corporation's 1988 return. Petitioner did not testify about or present any documentary evidence relating to the alleged loans. There were no written loan agreements, no repayment schedules, no notes evidencing the loan, and no loans from shareholders *422 (i.e., petitioner) reported on petitioner corporation's 1988 and 1989 returns. In the absence of any objective indications of a loan from petitioner to petitioner corporation and considering petitioner's failure to testify about the alleged loan, we are not convinced that petitioner lent money to petitioner corporation. We next decide whether petitioner's cash withdrawals were compensation or constructive dividends. Respondent contends that the cash withdrawals were constructive dividends to petitioner from petitioner corporation. We disagree. When a corporation pays a nondeductible personal expense of its sole shareholder, or permits a shareholder to use corporate property for a personal purpose, the shareholder receives a constructive dividend to the extent he or she receives a personal or economic benefit. Sec. 301; ; . Whether a corporation's payment of a personal expense of a shareholder employee is a constructive dividend or compensation is a question of fact. ; *423 , affg. . The payments are deductible if the corporation intended them to be compensation. , affg. in part, vacating in part, and remanding ; , affd. without published opinion . Petitioner corporation cannot deduct constructive dividends, but it may deduct compensation if the payments: (a) Do not exceed the reasonable compensation for the services actually rendered, and (b) are intended to be paid for services. ; , affd. without opinion ; . *424 Petitioner corporation's earnings arose solely from petitioner's efforts, and the amounts he withdrew are not unreasonable. See ; , affd. . We are persuaded by the record, especially the fact that petitioner corporation did not pay a salary to petitioner, that petitioner corporation paid petitioner's living expenses by means of the cash withdrawal, rather than pay him a salary. We find that petitioner corporation intended that payment of petitioner's living expenses, and its payment of $ 300 for his insurance premiums, be compensation, sec. 61(a)(1), and that those amounts are taxable to petitioner and deductible by petitioner corporation. See (wholly owned corporation that paid minimal salary to its sole shareholder intended its payment of his personal expenses to be additional compensation). b. Personal and Business Use of Condominium
Petitioner argues that petitioner corporation *425 may deduct the condominium expenses as business expenses in 1988. Respondent contends that the condominium was petitioner's residence and that he used it primarily for personal, not business, purposes, and that as a result, the condominium payments are a constructive dividend taxable to petitioner and not deductible by petitioner corporation. Petitioner used the condominium as his residence during the 45 to 65 days per year he was in Abilene in 1988 and 1989. As a result, the condominium was petitioner's personal residence during those years. The condominium was also petitioner corporation's principal place of business from 1987 to 1989. No deduction is allowed for personal, living, or family expenses. Sec. 262(a). As discussed above, petitioner corporation used one bedroom and the garage solely for business purposes. We find that petitioner corporation used one-fourth of the condominium exclusively for business. We conclude that petitioner corporation may deduct one-fourth of the 1988 condominium payments as business expenses. Sec. 162(a). The remaining three-fourths are nondeductible personal expenses. Sec. 262(a). Because one-fourth of the payments were petitioner corporation's *426 office expenses, they were not income to petitioner. , affd. ; ; . Petitioner corporation paid all of the expenses of petitioner's personal residence in 1988. Petitioner did not include these amounts in income. Petitioner benefited from these payments because he did not have to pay his own housing costs in 1988. We conclude that three-fourths of the value of these items was a constructive dividend to petitioner because we are not convinced that petitioner corporation intended them to be compensation to petitioner. See . 2. Home Office Expenses
Petitioner contends that petitioner corporation may deduct the 1989 condominium expenses as business expenses. Section 280A(c)(1) (A) [4] allows a deduction for home office expenses if the home office is exclusively and regularly used as the *427 principal place of any trade or business of the taxpayer. Section 280A applies to individuals, partnerships, and S corporations, but not to regular corporations. Sec. 280A(a). Petitioner corporation elected S corporation status on January 1, 1989. Thus, section 280A applies to petitioner for all years at issue and to petitioner corporation for 1989. *428 As discussed above, one bedroom in the condominium and the garage were used exclusively and regularly as petitioner corporation's principal office from 1987 to 1989. We conclude that petitioner corporation may deduct one-fourth of the condominium expenses for 1989. Petitioner corporation paid all of the expenses of petitioner's personal residence in 1989. Petitioner did not include these amounts in income. Petitioner benefited from these payments because he did not have to pay his own housing costs in 1989. As discussed above, three-fourths of these amounts are constructive dividends to petitioner because petitioner corporation did not intend them to be compensation. Petitioner received flowthrough income in 1989 when petitioner corporation became an S corporation. As discussed above, we held that petitioner corporation may not deduct as compensation three-fourths of the condominium expenses in 1989. The disallowance of this deduction increases petitioner corporation's income for 1989. A shareholder is taxed on his pro rate share of the S corporation income. Sec. 1366. Because petitioner is the sole shareholder of petitioner corporation, the additional S corporation income passes *429 through to petitioner in 1989. 3. Additions to Tax
a. Late Filing
A taxpayer is liable for an addition to tax of up to 25 percent for failure to timely file Federal income tax returns unless the taxpayer shows that the failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). Petitioner bears the burden of proving that his failure to file a timely return is due to reasonable cause and not willful neglect. ; ; , affd. without published opinion . To prove reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but was nevertheless unable to file the return within the prescribed time. ; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner testified that he timely filed his 1988 and 1989 returns. Wentrcek obtained extensions to file petitioner's 1988 *430 return. He testified that he timely filed petitioner's 1989 return. Wentrcek testified that he typically has a taxpayer review and sign his or her return, and then Wentrcek signs and mails the return. Petitioner's 1988 return was due October 15, 1989, and his 1989 return was due April 15, 1990. Respondent received petitioner's 1988 and 1989 returns on March 21, 1991. Petitioner did not offer any evidence concerning his failure to file his 1988 and 1989 returns before March 21, 1991. We sustain respondent's determination. Petitioner corporation contends that it timely filed its 1988 return. The return was due on March 15, 1989. Respondent received the 1988 corporate return on February 23, 1990. Other than Wentrcek's testimony described above about his general practices for filing returns, petitioner corporation did not present any evidence showing when its return was filed. Thus, we sustain respondent's determination. b. Negligence
Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. , affg. ; *431 , affg. in part and remanding in part and ; . Petitioner must show that he acted reasonably and prudently and exercised due care. Id.
Petitioner contends that the payments at issue were either loan repayments or deductible business expenses. Petitioner provided no corroborating evidence, and he failed to keep adequate records. Petitioner negligently failed to report as income cash he withdrew from the corporation and personal living expenses paid by his wholly owned corporation. Petitioner knew, or should have known, that he benefited from the corporation's paying his expenses. Petitioner also filed his 1988 and 1989 returns late. All of these actions were negligent. , affd. . We sustain respondent's determination that petitioner was negligent. We also sustain respondent's determination that *432 petitioner corporation was negligent because petitioner corporation did not show reasonable cause for filing its return late. . c. Failure to Pay Estimated Taxes
The addition to tax for failure to pay estimated tax under section 6654 is mandatory unless the taxpayer meets one of the computational exceptions in section 6654(d), none of which apply here. ; . Petitioner has paid none of the tax shown on his 1988 and 1989 returns. He offered no evidence on this issue. We hold that petitioner is liable for the addition to tax for 1988 and 1989 under section 6654 for failure to pay estimated tax. d. Substantial Understatement
The next issue for decision is whether petitioner is liable for the addition to tax for substantial understatement of income tax under section 6661(a) for 1988. Section 6661(a) provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement *433 is the amount by which the correct tax exceeds the tax reported on the return. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioner bears the burden of proving that imposition of the addition to tax under section 6661 is erroneous. Rule 142(a); . If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable to it. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Neither of these exceptions applies here. Petitioner argues that he is not liable for the addition to tax under section 6661 because he acted with reasonable cause and in good faith when he filed his 1988 return. We disagree. Petitioner received but failed to report income from petitioner corporation in 1988. He cited no basis for this omission other than his loan repayment claim, *434 which we found unconvincing. Petitioner has not shown that he had reasonable cause and good faith. We conclude that petitioner is liable for the section 6661 addition to tax if the Rule 155 computation shows that there was a substantial understatement of income tax for 1988. e. Accuracy-Related Penalty
Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662 applies. Sec. 6662(a). Section 6662 applies to an underpayment attributable, inter alia, to negligence or to a substantial understatement of income tax. Sec. 6662(b)(2). A substantial understatement of income tax occurs when the amount of the understatement for a taxable year exceeds the greater of 10 percent of the tax required to be shown or $ 5,000. Sec. 6662(d)(1)(A). Petitioner bears the burden of proving that he is not liable for the accuracy-related penalty. Rule 142(a). As discussed above, petitioner withdrew cash from the corporation, used those amounts for personal purposes, but failed to report income from petitioner corporation in 1989. He cited no basis for this omission other than his loan repayment claim, which we found unconvincing. Petitioner has not shown *435 that he had reasonable cause and good faith. We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a). To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
1. Fifty percent of the interest due on $ 13,512.24 for 1987.↩
2. Respondent concedes that petitioner James F. Smith is not liable for additions to tax under secs. 6653(a) (1) (A) and (B) and 6661 for 1987. Respondent also conceded $ 30,933 of income for 1987, $ 12,835 of dividends for 1988, and $ 18,172 of S corporation flowthrough income for 1989 for petitioner James F. Smith. Respondent conceded that petitioner corporation may deduct $ 5,000 of travel expenses, $ 1,089 of repairs, and $ 2,279 of insurance costs for 1988, and had $ 1,700 for cost of goods sold (auto) and a $ 5,003 loss on WET Marketing for 1989.↩
3. Respondent determined that petitioner corporation's cost of goods sold for 1989 was lower than reported. To the extent that we sustain respondent's determination, petitioner corporation's income increases and, because petitioner was the corporation's sole shareholder, the amount of S corporation income that flows through to petitioner increases.↩
4. Sec. 280A provides, in pertinent part: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or * * *
In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.↩